IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| STEVE RICHARDSON, Register No. 55320, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-4160-CV-C-NKL |
| | ) | |
| KENNETH CONNELL, Automotive Teacher III, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Steve Richardson, an inmate confined in a Missouri penal institution, brought this case under the Civil Rights Act of 1871, 42 U.S.C. § 1983, and its corresponding jurisdictional statute, 28 U.S.C. § 1343. This case was referred to the undersigned United States Magistrate Judge for processing in accord with the Magistrate Act, 28 U.S.C. § 636, and L.R. 72.1.

Before this court are the motions for summary judgment filed by defendant Kenneth Connell of the Missouri Department of Corrections (MDOC), defendant Correctional Medical Services (CMS) and CMS employee defendants Palmer, Coulson, Cofield, and Conley.[1]

### Summary Judgment Standard

Fed. R. Civ. P. 56(c) requires "the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden on the party moving for summary judgment "is only to demonstrate . . . that the record does not disclose a genuine dispute on a material fact." City of Mt. Pleasant, Iowa v. Associated Elec. Co-Op., 838 F.2d 268, 273 (8th Cir. 1988).

---

[1]Subsequent to the submission of motions for summary judgment, defendants' motions for dismissal were granted, in part, dismissing some defendants. For purposes of the instant recommendation, the Court has only considered summary judgment on behalf of the remaining defendants.

Once the moving party has done so, the burden shifts to the nonmoving party to go beyond his pleadings and show, by affidavit or by "depositions, answers to interrogatories, and admissions on file," that there is a genuine issue of fact to be resolved at trial. Celotex, 477 U.S. at 323. Evidence of a disputed factual issue which is merely colorable or not significantly probative, however, will not prevent entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Summary judgment, however, "is an extreme remedy, to be granted only if no genuine issue exists as to any material fact." Hass v. Weiner, 765 F.2d 123, 124 (8th Cir. 1985). In ruling on a motion for summary judgment, this court must view all facts in a light most favorable to the nonmoving party, and that party must receive the benefit of all reasonable inferences drawn from the facts. Robinson v. Monaghan, 864 F.2d 622, 624 (8th Cir. 1989).

If "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law," the court must grant summary judgment. Fed. R. Civ. P. 56(c).

### Statement of Facts

Plaintiff is an inmate in MDOC who, at the time of the accident in question, was painting the floor in the Algoa Correctional Center (Algoa) Automotive Garage. Plaintiff had received vocational training in automotive technology at Algoa, had been working at the garage for about a year or more and was certified by the Automotive Service Institute. Defendant Connell is employed by MDOC as a Vocational Teacher III at Algoa. On May 18 or 19, 2004,[2] while plaintiff was painting the floor of the automotive garage, defendant Connell instructed plaintiff to help eight other inmates move an engine out of the back of a state perimeter vehicle. Plaintiff states he asked Connell why he didn't wait on the cherry picker to hoist the engine out of the bed of the truck. Plaintiff states Connell responded that he wanted the engine out of the truck now because the truck was a perimeter vehicle and wasn't supposed to be used to carry personal property in and out of the institution. While unloading the engine and transmission, plaintiff got

---

[2]Plaintiff has indicated that the accident took place on May 18, 2004, while documentation from MDOC indicates the accident occurred on May 19, 2004; but there is no dispute that the accident occurred before May 20, 2004.

2

his right index finger pinned under the load. Defendant Connell immediately radioed in a medical emergency to obtain medical attention for Richardson.

Plaintiff was evaluated by nondefendant medical personnel, and such personnel determined it necessary to send plaintiff to the emergency room (an independent nondefendant hospital) for evaluation and treatment. At the emergency room, an evaluation by a nondefendant doctor and an X-ray revealed no fracture to plaintiff's index finger; a laceration of approximately 2 cm. in length across the index finger with apparent soft tissue damage; inability to flex the index finger and decreased sensation; and a fracture at the base of the fifth finger. A nondefendant orthopedic surgeon was consulted, who discussed treatment options with plaintiff. Richardson had no complaints about his fifth finger, and treatment on his second finger was the treatment option to be completed. Plaintiff was subsequently given pain medications and taken to the operating room for the surgical repair of the tendons in his finger. Plaintiff was kept overnight in outpatient observation and then discharged to Algoa with prescribed pain medications and discharge instructions.

On May 25, 2004, plaintiff was transported for a follow-up consultation with the nondefendant orthopedic surgeon. The surgeon directed dressing changes three times a week, clean sutures with water, apply Neosporin ointment, wear splint constantly and return in two weeks to check the wound and arrange rehabilitation for finger. On June 10, 2004, plaintiff was again transported for a follow-up appointment with the orthopedic surgeon. The doctor's evaluation concluded plaintiff to have a limited and somewhat painful range of motion. Directives were to graduate plaintiff to a dynamic rubber band splint for three to four weeks and that plaintiff was now in need of rehabilitation by an occupational or physical therapist for three to six weeks. On June 14, 2004, a physician referral was entered by CMS defendant R.N. Palmer, per nondefendant CMS Dr. Messinger. The referral was approved on June 15, 2004. On June 29, 2004, plaintiff was evaluated and treated by a nondefendant independent (not a CMS employee) therapist. The therapist assessed plaintiff and determined him to have some swelling in his index finger, a well-healed incision, complaints of numbness and pain along the incision line, limited range of motion, and decreased strength and function. The therapist noted plaintiff was educated on exercises, including scar massage, tendon glides, pinching, individual finger tapping and gentle passive range of motion. The therapist recommended that plaintiff be seen by

3

an occupational or a hand therapist, with appointments to occur once a week for six weeks, and that such therapist fabricate for plaintiff a dynamic splint. This referral was submitted on July 1, 2004, by defendant Palmer, per directive of a nondefendant CMS doctor. On July 7, 2004, the referral was approved. On July 14, 2004, plaintiff was seen by nondefendant Dr. Jones for finger evaluation. Dr. Jones' notes indicate he believed plaintiff's tendon repair may have failed and that because plaintiff's previous orthopedic doctor, who had done the surgery, had left town, plaintiff should be referred to orthopedic Dr. Cameron to determine plaintiff's future needs. An independent occupational therapist evaluated plaintiff on August 2, 2004.

The occupational therapist noted during plaintiff's August 2, 2004 evaluation that plaintiff stated he had one previous therapy session, and since that session, had felt a pain like a band snap, with the pain then going away, and subsequently, no movement in the area. Plaintiff advised the therapist that, at the time, he didn't think much of the incident. Plaintiff further complained of pain, limited movement and numbness. The occupational therapist evaluated plaintiff as having limited movement of his index finger, with movement of the MP joint, but no movement from the IP or PIP joint; decreased strength; impaired sensation in tip of finger; swelling with scar, and complaints of pain. The occupational therapist recommended plaintiff's flex tendons be checked by a physician because it was believed that plaintiff may have ruptured a tendon. It was further recommended that plaintiff return for therapy sessions three times a week for four weeks. On August 2, 2004, a referral request was submitted by a nondefendant CMS doctor. The referral requested plaintiff to see orthopedic Dr. Cameron because plaintiff's previous orthopedic doctor had left town. This request was approved on August 10, 2004. On August 3, 2004, plaintiff again was seen by an occupational therapist. Plaintiff was issued a rubber band yellow with putty to work on range of motion. On August 5, plaintiff's appointment with the occupational therapist was rescheduled due to plaintiff's assignment to segregation. Four days later, on August 9, 2004, and thereafter again on the 12th and 16th, plaintiff was seen by an independent occupational therapist and completed exercises and was issued therapy equipment to use for continued hand therapy.

On August 16, 2004, plaintiff filed his first internal resolution request (IRR) regarding his medical care for his injured hand, alleging he was denied physical therapy, and stating he was reserving his right to file litigation. On August 19, 2004, defendant Palmer met with plaintiff to

4

discuss his IRR. Defendant Palmer noted that plaintiff's main complaint was recent complications with his injured finger and that due to the complications, he may require additional surgery. Notes of Palmer reflect that plaintiff acknowledged this complication was just that, a complication, and not due to neglect, indifference or delay in care. Palmer's notes indicate plaintiff was understanding, but still upset.

On August 23, 2004, per referral, plaintiff was seen by nondefendant orthopedic Dr. Cameron, who determined plaintiff's plan of care to be conservative therapy to stretch the tendon and possible repair of tendon required, depending on further assessment in one month. The referral for the follow-up appointment was approved. On August 23, 2004, plaintiff again tells the occupational therapist that when he felt his finger snap, he was working on exercises his initial therapist gave him. Plaintiff further stated that the next day, he went to see nondefendant Dr. Jones. From August through December 2004, plaintiff continued to receive his recommended physical/occupational therapy.

On September 27, 2004, plaintiff was again evaluated by the orthopedic doctor with a directive for continued physical therapy, with such referral approved on the 30th. On October 25, 2004, plaintiff was again evaluated by an orthopedic doctor who recommended that plaintiff have tendon reconstructive surgery with continued hand therapy. This referral request was approved on November 4, 2004. On December 14, 2004, plaintiff had surgical repair of flexor tendons on his right index finger, with stage one tendon reconstruction of the rupture flexor tendon. Subsequent to surgery, plaintiff continued to receive medical care and on December 23, 2004, he was determined eligible to resume hand therapy.

Plaintiff continued to receive follow-up appointments, therapy, and upon recommendation of his orthopedic doctor, plaintiff had stage two of reconstruction (upon determination that plaintiff had a good range of motion) on his index finger on May 5, 2005. Again, plaintiff continued to receive follow-up appointments, therapy and medical care.

On September 13, 2005, plaintiff was evaluated by a nondefendant physician who noted plaintiff's index finger wound was healed and he was educated on exercises. It was noted that plaintiff wanted his restriction lifting with his right hand discontinued, but such request was denied, and the restriction was continued and was to be re-evaluated in three months.

5

On October 26, 2005, plaintiff was released from prison. On November 17, 2005, plaintiff was returned to MDOC, and upon evaluation by nondefendant nurse, plaintiff made no complaints related to the injury to his right hand or index finger.

## Discussion

In support of his claims against defendant Connell, plaintiff asserts that defendant Connell knowingly compelled him to perform work that was dangerous and unsafe, and was beyond his strength. Plaintiff further asserts that defendant Connell exhibited deliberate indifference by not waiting for the proper equipment and by instructing plaintiff and others to remove the automotive engine from the back of the perimeter truck by hand.

In support of his claims against defendants CMS and named CMS employees, plaintiff asserts that defendants' failure to timely commence physical therapy caused permanent damage to his injured finger and caused plaintiff to undergo a second surgery to his finger.

In response to plaintiff's assertions seeking relief, defendant Connell states there is no evidence that defendant Connell's actions were done with deliberate indifference for plaintiff's safety, or were in violation of any safety rules. Defendant Connell asserts that, at most, plaintiff's claims are that of negligence, which is not actionable under 42 U.S.C. § 1983.

Defendant CMS asserts that plaintiff has no claim against it because plaintiff's medical care did not involve a policy or custom of CMS and, moreover, CMS does not determine policy with regard to medical care; rather, MDOC has final authority. The named CMS employee defendants assert that the delay in physical therapy of which plaintiff complains occurred between June 2004 and August 8, 2004, and that their involvement occurred after such date. Defendants further assert that their involvement in plaintiff's medical care was either as administrative officials or medical personnel who were not personally involved in plaintiff's actual primary clinical medical care, and thus, these claims are not actionable because respondeat superior claims are barred in section 1983 claims. Lastly, defendants argue that plaintiff received a plethora of medical care for his finger and was seeing a specialist and receiving therapy, and, thus, plaintiff has no claim of deliberate indifference to a serious medical need.

*Missouri Department of Corrections Defendant Kenneth Connell*

Conditions of a prisoner's confinement can give rise to an Eighth Amendment violation. Choate v. Lockhart, 7 F.3d 1370, 1373 (8th Cir. 1993). Prison work assignments are conditions of confinement subject to scrutiny under the Eighth Amendment. Id. To establish that a prison work condition is in violation of the Eighth Amendment, an inmate must prove both the objective and subjective elements of an Eighth Amendment claim. The objective element asks whether the deprivation was sufficiently serious, and the subjective element asks whether the defendant officials acted with a sufficiently culpable state of mind. Id. In cases challenging prison conditions, the sufficiently culpable state of mind giving rise to liability is deliberate indifference. Id. Deliberate indifference requires something more than mere negligence or inadvertence. Id. at 1374. Deliberate indifference requires the unnecessary and wanton infliction of pain. Id.

In the work assignment context, prison officials are deliberately indifferent when they knowingly compel prisoners to perform physical labor which is beyond their strength or which constitutes a danger to their health or which is unduly painful. Id.; Franklin v. Banks, 979 F.2d 1330, 1332 (8th Cir. 1992); Ray v. Mabry, 556 F.2d. 881, 882 (8th Cir. 1977) (per curiam)). Deliberate indifference requires a highly culpable state of mind, approaching actual intent. Choate, 7 F.3d at 1374.

In the instant case, there is nothing in the record to support a finding that defendant Connell's actions constituted deliberate indifference to plaintiff's safety. First, there is no evidence in the record that defendant Connell's actions were in violation of any safety rules. There is no evidence that numerous prisoners moving an engine by hand without the assistance of the cherry picker hoist was prohibited or even that such cherry picker was mandated for such work. Moreover, the evidence is that prior to this accident, plaintiff had done this type of work around the automotive shop before and didn't think that Connell's request that he assist with the engine was an unusual or strange request. Plaintiff had been asked by Connell to move equipment or machinery by hand on a number of occasions, including such things as car frames, transmissions, front ends and other heavy items. Further, there is no evidence that previous accidents like this had occurred, such that Connell would be on notice that plaintiff was likely to be hurt.

7

Additionally, the evidence in the record indicates that when the engine arrived in the garage area of the prison, defendant Connell was told that the engine had been loaded into the truck by the Automotive Supervisor with only the help of the teenage boy who had delivered it to the upper prison parking lot. Based on such information, Connell had no reason to believe that the nine inmates he requested to move the engine would be put at risk of harm. Further, the evidence clearly provides that Connell immediately radioed for medical assistance when plaintiff's finger was injured.

Based on the evidence in the record, plaintiff has not provided evidence to support either the objective or the subjective element required for a deliberate indifference claim under the Eighth Amendment. Plaintiff has come forward with no evidence that he was physically incapable of providing assistance to eight other inmates in moving the engine from the truck, or that moving the engine as directed was beyond his capabilities. Moreover, although use of the cherry picker hoist may have been a safer alternative to the nine inmates moving the engine by hand from the truck, the evidence does not establish that Connell's request was unreasonable or posed extreme danger, or that Connell had the requisite culpable state of mind when directing plaintiff to help move the engine. Connell's actions in directing plaintiff and eight other inmates to move the engine from the truck, while perhaps not a model of workplace safety, did not rise to the level of deliberate indifference in violation of plaintiff's constitutional rights. See id. (failure to erect toed boards on the roof or require inmates to wear rubber-soled shoes, despite one complaint of slickness, does not violate the Constitution); see also Warren v. Missouri, 995 F.2d 130 (8th Cir. 1993) (failing to put safety device on saw being used by prisoners, despite knowledge of the saw's potential danger, fails to state a claim of deliberate indifference). In taking plaintiff's evidence in the light most favorable to him, plaintiff's claims against defendant Connell are, at most, claims of negligence, which are not actionable under 42 U.S.C. § 1983.

To the extent plaintiff attempts to assert a state law negligence claim in this action, such claims are dismissed, without prejudice. "Under 28 U.S.C. § 1367(c)(3) a court may 'decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction.' Congress unambiguously gave district courts discretion in 28 U.S.C. § 1367(c) to dismiss supplemental state law claims when all federal claims have been dismissed . . . ." Gibson v. Weber, 433 F.3d 642, 647 (8th Cir. 2006). The Supreme Court

8

specifically noted in United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966), that "[c]ertainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." See Hassett v. Lemay Bank and Trust Co., 851 F.2d 1127, 1130 (8th Cir. 1988) (district court's refusal to exercise pendent jurisdiction over plaintiff's state law claims was proper where court had dismissed plaintiffs' § 1983 claims).

*Medical Claims - CMS and CMS Employee Defendants Palmer, Coulson, Cofield and Conley*

Plaintiff's claims are based upon allegations that defendants were deliberately indifferent to his serious medical needs, in violation of his constitutional rights. To succeed on his Eighth Amendment medical claims, plaintiff must allege and prove, by a preponderance of the evidence, a "deliberate indifference to a serious medical need." Estelle v. Gamble, 429 U.S. 97, 106 (1976). Prison officials may not be held liable under 42 U.S.C. § 1983 for mere negligence or even gross negligence in the treatment of an inmate. Id., Estate of Rosenberg by Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). The standard for "deliberate indifference" includes an objective and a subjective component. Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). Thus, to prevail on his claims, plaintiff must show 1) that the medical deprivation was objectively sufficiently serious; and 2) that prison officials subjectively knew about the deprivation and refused to remedy it. A serious medical need is defined as "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995) (quoting Johnson v. Busby, 953 F.2d 349, 351 (8th Cir. 1991)); see also Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997) (citing Camberos v. Branstad, 73 F.3d at 176). When an inmate alleges a delay in medical treatment constituted a constitutional deprivation, the objective seriousness of the deprivation is also measured by reference to the effect of the delay in treatment. Coleman v. Rahija, 114 F.3d at 784 (citing Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997)); see also Beyerbach v. Sears, 49 F.3d at 1326. An inmate who complains that the delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995) (quoting Hill v. Dekalb Regional Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994)).

9

A mere difference of opinion between plaintiff and his treating physician about what treatment is appropriate does not give rise to a colorable claim under section 1983. Warren v. Fanning, 950 F.2d 1370, 1373 (8th Cir. 1991); Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990); Courtney v. Adams, 528 F.2d 1056 (8th Cir. 1976). Likewise, disagreement with a diagnosis or course of medical treatment is insufficient to state a claim. Davis v. Hall, 992 F.2d 151, 153 (8th Cir. 1993). Nothing in the Eighth Amendment prevents doctors from exercising independent medical judgment. Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996).

In the instant case, the parties do not dispute that plaintiff's injured finger resulting from the engine falling on his hand constituted a serious medical condition. However, the parties do dispute whether plaintiff's medical care was unconstitutionally delayed and/or denied.

Upon review of the medical records and the Medical Service Request (MSR) forms, the court finds, for the reasons set forth below, that, despite plaintiff's allegations, he has failed to set forth evidence that he was denied medical care for a serious medical need, or that necessary medical care was delayed, resulting in injury.

Plaintiff's claims against CMS fail because he has failed to come forward with evidence that CMS was responsible for setting the policies of which plaintiff challenges regarding the manner in which plaintiff's physical therapy appointments were referred and scheduled. CMS has provided undisputed evidence that MDOC has final policy-making authority.

Plaintiff's claims against CMS employee defendants Palmer, Coulson, Cofield and Conley also fail because plaintiff has come forward with no evidence that the alleged delay in plaintiff receiving appropriate physical therapy sessions in June and July of 2004 involved these defendants. Plaintiff's claims against these defendants appear to be that once plaintiff filed his initial IRR on August 16, 2004, these defendants were involved in the grievance process, which plaintiff claims failed to immediately correct the denial/delay of his medical care. To the extent plaintiff alleges he was denied proper medical care after he filed his IRR, the record is contrary to plaintiff's assertion. In the month of August alone, following plaintiff's initial appointment with the occupational therapist on August 2, 2004, plaintiff received the following therapy: seen by occupational therapist on August 3, 9, 12, 16, and 23; was issued occupational therapy equipment to use for doing exercises on his own (as instructed by his therapist), including a purple ball, blue sponge, and two finger bands; and was seen by an orthopedic nondefendant

doctor on August 23, 2004, for evaluation. In the following months, plaintiff continued to receive occupational therapy and monthly evaluations by his orthopedic specialist doctor. Plaintiff also received two reconstructive surgeries on his finger prior to his release from prison in October 2005. Thus, based on the undisputed facts, there is no evidence that the named CMS employee defendants denied plaintiff proper medical care. Plaintiff's medical records indicate he clearly was being provided necessary medical care for his finger/hand.

The court also notes that to the extent that the named CMS defendants or others are alleged to have unconstitutionally delayed plaintiff's physical therapy, such claims are not supported by the evidence. The referrals were timely approved by CMS and there is no evidence that any delays were intentional with deliberate indifference to plaintiff's health and safety.

Moreover, the evidence in plaintiff's medical records contradicts his statements in his complaint that medical personnel told him he required additional surgery because he did not receive immediate physical therapy. Plaintiff told his occupational therapist on two occasions that he had felt a snap and pain in his finger when he was working on exercises that another therapist gave him at the end of June. When seen by the orthopedic specialist on August 23, 2004, the specialist did not cite plaintiff's lack of immediate therapy as the cause for the laceration of the tendon. Plaintiff himself stated in his August 16, 2004 conference with defendant Palmer regarding his IRR, that although upset, he understood his complications were just that, complications, and were not due to neglect, indifference or delay.

When there is a complicated issue of causation, expert testimony is required to show proof of causation. See Alberson v. Norris, 458 F.3d 762, 765-66 (8th Cir. 2006). Richardson's statement that his complications arising from the injury to his finger arose out of the delays in his receiving therapy between his initial referral on June 10, 2004, and his receiving one therapy treatment on June 29 with a physical therapist, and a second therapy treatment with an occupational (hand) therapist on August 2, 2004, is not supported by any evidence. Although there was some delay between plaintiff receiving referrals and his receiving the care of an occupational therapist, plaintiff's statement that these delays were the cause of him having to endure additional surgery is not supported by expert testimony and, moreover, is not supported by the medical records.

11

In light of the fact that plaintiff has no evidence of causation, plaintiff also has no evidence to support the required proof of detrimental effect to support a constitutional claim for delay in receiving medical care. Plaintiff has no evidence that the alleged delay in his receiving occupational therapy worsened the condition of his finger/hand or that any delay that occurred was done intentionally.

In the face of plaintiff's medical records indicating treatment was provided to plaintiff and the physician affidavits indicating the care provided was adequate, plaintiff cannot create a question of fact merely by stating he believes he did not receive adequate medical care. Meuir v. Greene County Jail Employees, ___ F.3d ___ (8th Cir. 2007) WL1610472. Taking plaintiff's evidence in the light most favorable to plaintiff, this court finds plaintiff has come forward with no evidence from which a reasonable jury could find defendants deliberately disregarded plaintiff's serious medical needs, or even that the named CMS defendants were directly involved in such care.

## Conclusion

Plaintiff has failed to provide evidence from which a reasonable jury could find that defendants' actions constituted cruel and unusual punishment against plaintiff, in violation of the Eighth Amendment. The evidence does not support a claim that defendants acted with deliberate indifference to plaintiff's health or safety.

IT IS, THEREFORE, RECOMMENDED that defendants' motions for summary judgment be granted, and plaintiff's claims be dismissed [36, 39].

Under 28 U.S.C. § 636(b)(l), the parties may make specific written exceptions to this recommendation within twenty days. The District Judge will consider only exceptions to the specific proposed findings and recommendations of this report. Exceptions should not include matters outside of the report and recommendation. Other matters should be addressed in a separate pleading for consideration by the Magistrate Judge.

The statute provides for exceptions to be filed within ten days of the service of the report and recommendation. The court has extended that time to twenty days, and thus, additional time to file exceptions will not be granted unless there are exceptional circumstances. Failure to make specific written exceptions to this report and recommendation will result in a waiver of the right to appeal. See L.R. 74.1(a)(2).

Dated this 29th day of June, 2007, at Jefferson City, Missouri.


/s/ *William A. Knox*

WILLIAM A. KNOX
United States Magistrate Judge

13